COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS

| | | |
|---|---|---|
| RAY E. GILBERT, JR., | § | No. 08-08-00282-CV |
| Appellant, | § | |
| | | Appeal from the |
| v. | § | |
| | | County Court at Law No. Three |
| | § | |
| CITY OF EL PASO AND EL PASO | | of El Paso County, Texas |
| WATER UTILITIES PUBLIC SERVICE | § | |
| BOARD, | | (TC# 2008-2030) |
| | § | |
| Appellees. | | |

**O P I N I O N**

Appellant, Mr. Ray E. Gilbert, Jr. ("Mr. Gilbert") appeals the trial court's grant of the City of El Paso ("the City") and El Paso Water Utilities Public Service Board's ("the PSB") motion for summary judgment, the denial of his motion for summary judgment, and the court's entering a declaratory judgment in favor of the City and the Board.

Mr. Gilbert is a resident of El Paso County, Texas, and a "user" under Section 402.044(9) of the Municipal Drainage Utility Systems Act and owner/occupier of benefitted property as defined by Section 402.044(1)(A) of the Municipal Drainage Utility Systems Act. The El Paso Water Utilities Public Service Board is described as a department of the City of El Paso and it is operated as a largely autonomous independent board. El Paso City Council's Ordinance No. 752 created the PSB, and Section 8 of the Ordinance addresses the PSB's authority over the management and operation of the City's waterworks plant and system, as well as its sewer system. The PSB is a five-member board of trustees vested with management and control of a

utility system.

The City, as it created this new district and in its pleadings below defending the delegation of the district's powers to the PSB, not surprisingly ignore the older, longer history of the core issue at hand. Almost two decades ago, when the author had a front row seat, the City introduced an ordinance to establish the same municipal drainage utility, but that effort was labeled a "rainwater tax," and weeks later a popular mayor and two city representatives lost their reelections. Creation of a municipal drainage district would not be spoken of until "Storm 2006."

The major storms and flooding in July 2006 resulted in extensive damage to public and private property, as well as the City's stormwater drainage infrastructure, such as it was. Following the floods, the City unshelved and undertook a new study of its existing stormwater management program and options so as to address the stormwater management.

A majority vote of the entire membership of the El Paso City Council adopted Ordinance No. 16668 on June 19, 2007, and it became effective upon its adoption. Ordinance No. 16668 establishes a municipal drainage utility for the City pursuant to the provisions of Subchapter C of Chapter 402 of the Texas Local Government Code, as amended ("the Municipal Drainage Utility Systems Act" or "the Act"), § 402.041, et seq. The City adopted the Act and declared the established municipal drainage utility system to be a public utility through Ordinance No. 16668.

Ordinance No. 16668 provides that, except as otherwise provided in the ordinance or under applicable law, the PSB shall have complete authority and control of the municipal drainage utility system's management and operation, as established by Ordinance No. 16668, on behalf of the City. The City's delegation to the PSB of management and operation of the City's

municipal drainage utility was made pursuant to authority the City *believes* to exist in Chapter 1502 of the Texas Government Code, § 1502.001, et seq.

After Ordinance No. 16668 was passed, the PSB held a public hearing on the proposed rules and schedule of charges to be levied on the drainage utility. The PSB issued notice of the time and place of the hearing three times in the El Paso Times for the public's consideration of these rules and charges, including the proposed schedule of drainage charges. The PSB adopted the rules and original schedule of monthly stormwater fees for the City's municipal drainage ("Rules and Regulations No. 3") utility at its regular meeting on December 12, 2007. The City directed the PSB on behalf of the City to establish a schedule of drainage charges against all real property in the proposed service area subject to charges. The PSB established rules for the rate of furnishing the stormwater service, determined the charge for drainage service, set the schedule of charges for the drainage service, and fixed the rates for drainage charges. Rules and Regulations No. 3 took effect upon the PSB's adoption. The monthly stormwater fees became effective on March 1, 2008. In a special public meeting held in May 2008, the PSB reduced the monthly utility rates charged for stormwater management.

In late May 2008, Mr. Gilbert and two other plaintiffs, all of whom were residents of El Paso County and "users" and "owners" or "occupiers" as defined under the relevant sections of the Act, filed their original petition and application for injunction relief. The plaintiffs brought the following claims against the City and the PSB: (1) for injunctive relief to restrain them from imposing and collecting any stormwater fees and from enforcing Ordinance No. 16668 and Rules and Regulations No. 3; (2) for declaratory relief to conclude that the stormwater fee, Ordinance No. 16668, and Rules and Regulations No. 3 were invalid on the bases that the

-3-

City lacked authority to delegate to the PSB powers granted to the City under the Act, that the PSB lacked authority to establish or charge drainage fees, and that the City and the PSB failed to comply with the Act. In the City and the PSB's answer, they generally denied the plaintiffs' allegations, and demanded strict proof of them. They also counterclaimed for declaratory judgment.

The plaintiffs initially requested a hearing on their application for temporary injunction, which was set for June 6, 2008, but they later withdrew that request. The City filed its brief to oppose temporary injunction on June 2, 2008. The trial court held a status conference hearing on June 11, 2008, during which the parties agreed to proceed by submitting cross-motions for summary judgment, for ruling without hearing or argument, unless the court so requested. The parties then entered into a Rule 11 Agreement that the case would be submitted for disposition on cross-motions for summary judgment, which would "dispose of all issues of all parties and constitute the Court's final judgment . . . ."

After the parties filed their motions for summary judgment and the trial court held a hearing on these motions, the court entered its final judgment in August 2008. The court granted the City and the PSB's motion for summary judgment, denied the plaintiffs' motion for summary judgment, and entered declaratory judgment in favor of the City and the PSB. The court also awarded the defendants attorney's fees in the amount of $25,000 in the event that the plaintiffs appealed the judgment to this Court and $15,000 in the event that the plaintiffs sought review by the Texas Supreme Court.

In September 2008, the plaintiffs filed a motion for new trial. On the same day, Mr. Gilbert filed his notice of accelerated appeal.

Initially, we note that we must construe Mr. Gilbert's brief liberally as he is appearing *pro se*. *See Sterner v. Marathon Oil Co.*, 767 S.W.2d 686, 690 (Tex. 1989). However, *pro se* litigants still must comply with all applicable procedural rules. *Valadez v. Avitia*, 238 S.W.3d 843, 845 (Tex.App.--El Paso 2007, no pet.); *Martinez v. El Paso County*, 218 S.W.3d 841, 844 (Tex.App.--El Paso 2007, pet. struck); *Harris v. Showcase Chevrolet*, 231 S.W.3d 559, 561 (Tex.App.--Dallas 2007, no pet.); *Sweed v. City of El Paso*, 195 S.W.3d 784, 786 (Tex.App.-- El Paso 2006, no pet.).

It is the appellant's burden to properly raise and discuss the issues presented for review. *See* TEX.R.APP.P. 38.1(f); *Valadez*, 238 S.W.3d at 845; *Martinez*, 218 S.W.3d at 844. "It would be inappropriate for this Court to attempt to re-draft and articulate what we believe [Mr. Gilbert] may have intended to raise as error on appeal." *Valadez*, 238 S.W.3d at 845, *citing Martinez*, 218 S.W.3d at 845. An issue presented in an appellant's brief is sufficient, if it directs the reviewing court's attention to the error about which the complaint is made. *Valadez*, 238 S.W.3d at 845; *Martinez*, 218 S.W.3d at 844. An appellate court has no duty--or even right--to perform an independent review of the record and applicable law to determine whether there was error. *Valadez*, 238 S.W.3d at 845; *Martinez*, 218 S.W.3d at 844. Were we to do so, even on behalf of a *pro se* appellant, we would be abandoning our role as neutral adjudicators and become an advocate for that party. *Valadez*, 238 S.W.3d at 845; *Martinez*, 218 S.W.3d at 844. In the review of a civil case, the appellate court has no discretion to consider an issue not raised in the appellant's brief, even if the ends of justice so require. *Valadez*, 238 S.W.3d at 845; *Martinez*, 218 S.W.3d at 844.

For the most part, Mr. Gilbert's brief does not comply with Texas Rule of Appellate

Procedure 38. However, the brief does clearly articulate one meritorious argument regarding the trial court's award of attorney's fees. Mr. Gilbert asserts that the trial court awarded appellate attorney's fees without any evidence to support the award.

At a hearing on the entry of judgment, the defendants' attorney argued that the trial court should order the plaintiffs to pay the defendants' attorney's fees. The court expressed a reluctance to award attorney's fees "because it may have a chilling effect in the future against anyone who may want to pursue a claim -- whatever claim in the future -- against the City or the County . . . ." The court did not make a ruling at the hearing, but stated that it would advise counsel of its ruling later that day. The plaintiffs' attorney requested a hearing on the amount of fees in the event that the court decided that an award was appropriate. The court indicated that another hearing would be held if it decided to award fees.[1] Nevertheless, the record does not reflect that another hearing was held. On the same day that the hearing on entry of judgment was held, the trial court signed the final judgment, which denied attorney's fees for the work performed at the trial level, but awarded fees to the defendants in the amount of $25,000 for appeal to this Court and $15,000 for any appeal to the Texas Supreme Court.

An award of attorney's fees under the Declaratory Judgments Act is within the trial court's discretion. *See* TEX.CIV.PRAC.&REM.CODE ANN. § 37.009 (Vernon 2008); *Elijah Ragira/VIP Lodging Group, Inc. v. VIP Lodging Group, Inc.*, 301 S.W.3d 747, 757 (Tex.App.-- El Paso 2009, pet. denied). We have routinely upheld predetermined attorney's fees as being

---

[1] The plaintiffs' attorney stated that he wanted "to confirm, the opportunity, if the Court does say attorney's fees will be granted to contest them and attack them." The court responded, "Absolutely."

"within the established jurisprudence of this State."[2] *Gunter v. Bailey*, 808 S.W.2d 163, 166

(Tex.App.--El Paso 1991, no writ); *see also Pullman v. Brill, Brooks, Powell & Yount*, 766

S.W.2d 527, 530 (Tex.App.--Houston [14th Dist.] 1988, no writ)(rejecting the argument that "the

predetermined award of attorney's fees in the event of appeal is unconstitutional as a violation of

due process, or as a limitation on the right to access to the courts.").

However, a trial court may not punish a party for taking a successful appeal. *ASAI v.*

*Vanco Insulation Abatement, Inc.*, 932 S.W.2d 118, 123 (Tex.App.--El Paso 1996, no writ). An

unconditional award of attorney's fees has a chilling effect on the paying party's exercise of legal

rights. *In re Ford Motor Co.*, 988 S.W.2d 714, 722 (Tex. 1998)(orig. proceeding). Accordingly,

an award of appellate attorney's fees must be conditioned on the appeal being unsuccessful. *See*

*In re Ford Motor Co.*, 988 S.W.2d at 721; *ASAI*, 932 S.W.2d at 123; *see also Goebel v.*

---

[2] But here, where a citizen is challenging governmental action, I have come to believe that such awards are a denial of the constitutional right to access the courts. I therefore take the rare step of writing this separate footnote to address an issue that also troubled the trial court: Can the award of attorney's fees have an unconstitutional chilling effect on a citizen's attempt to challenge governmental action? It appears that the trial judge thought so, for he denied the City's request for over $44,000 in outside attorney's fees at the trial level but he did award predetermined appellate fees.

I have found no case law discussing the potential chilling effect that an award of appellate attorney fees could have when a citizen is challenging governmental action. As noted above, this Court has upheld the award of predetermined appellate attorney's fees and the Fourteenth Court of Appeals has rejected the argument that "the predetermined award of attorney's fees in the event of appeal is unconstitutional as a violation of due process, or as a limitation on the right to access to the courts." *Pullman v. Brill, Brooks, Powell & Yount*, 766 S.W.2d 527, 530 (Tex.App.--Houston [14th Dist.] 1988, no writ).

I have, however, come to believe that predetermined awards of appellate fees are objectionable, in general, and especially noisome in cases, like this, where citizens challenge a governmental action. If this were a patently frivolous law suit, I might be less offended; but it is not. And it seems to me abundantly clear from the record that the award of predetermined appellate attorney's fees had a chilling effect such that Mr. Gilbert was left alone and *pro se* to pursue his legal contentions.

*Brandley*, 76 S.W.3d 652, 658-59 (Tex.App.--Houston [14th Dist.] 2002, no pet.)(citing this rule in a declaratory judgment case), *disapproved on other grounds*, *Martin v. Amerman*, 133 S.W.3d 262, 268 (Tex. 2004). The proper remedy for an unconditional award of appellate attorney's fees is to modify the judgment so that the award depends on the paying party's lack of success on appeal. *Hoefker v. Elgohary*, 248 S.W.3d 326, 332 (Tex.App.--Houston [1st Dist] 2007, no pet.).

In this case, the award of appellate attorney's fees was not conditioned on the appeal being unsuccessful. Because Mr. Gilbert has not prevailed on the merits, the failure to make the award conditional is harmless regarding his appeal to this Court. But it is not harmless as to any petition for review to the Texas Supreme Court.

Moreover, there must be evidence to support an award of attorney's fees on appeal. *See Varner v. Cardenas*, 218 S.W.3d 68, 69-70 (Tex. 2007); *C & K Invs. v. Fiesta Group, Inc.*, 248 S.W.3d 234, 252 (Tex.App.--Houston [1st Dist.] 2007, no pet.); *Reeves Cnty., Tx. v. Pecos River Livestock, Inc.*, No. 08-99-00007-CV, 2000 WL 1433870, at *10 (Tex.App.--El Paso Sept. 28, 2000, no pet.)(not designated for publication). In this case, there is no evidence to support the attorney's fee award. At the hearing on the entry of judgment, counsel presented their arguments regarding the propriety of awarding attorney's fees. The defendants' attorney indicated that he had affidavits and supporting documents to establish the amount of attorney's fees, but he did not offer any evidence at the hearing. The plaintiffs' attorney requested another hearing regarding the amount of the fees if the trial court decided to make an award. Although the trial court indicated that it would hold a subsequent hearing, no such hearing was held. Instead, the court simply entered a final judgment, apparently prepared by the defendants, awarding appellate attorney's fees. Because there is no evidence to support the amounts contained in the judgment,

the attorney's fee award should be deleted from the judgment. *See, e.g., Reeves Cnty., Tx.*, 2000 WL 1433870, at *11 ("[T]he award of appellate attorney's fees was not conditioned on whether [the appellants] were successful in prosecuting their appeal. Furthermore, there is no evidence in the record supporting the reasonableness of the award. Accordingly, we . . . delete the award of appellate attorney's fees from the judgment.").

The trial court's judgment is modified to delete the award of appellate attorney's fees. Because Mr. Gilbert did not adequately argue any other ground for reversal of the judgment, the judgment is otherwise affirmed as modified.


October 13, 2010

DAVID WELLINGTON CHEW, Chief Justice

Before Chew, C.J., McClure, and Rivera, JJ.